MUNICIPALITY OF PONCE, PLAINTIFF AND APPELLANT, *v.*
VENDRELL, DEFENDANT AND APPELLEE.

APPEAL from the District Court of Ponce in an Action for
Injunction.

No. 1951.—Decided April 15, 1920.

CONSTITUTIONAL LAW — MUNICIPAL ORDINANCE — EXPROPRIATION — EMINENT DO-
    MAIN.—A municipal ordinance which deprives the owners of certain lots of
    the use of a portion of their lots without previous proceeding for expropri-
    ation is unconstitutional, for the legislature has not conferred such power
    upon the municipalities and the restriction of the use of the property amounts
    to an act of eminent domain.
ID.—ID.—PERMIT FOR BUILDING—LOTS.—A permit granted to a person by a mu-
    nicipality to build on a lot owned by him in accordance with the provisions
    of a municipal ordinance only obliges the person to comply with such con-
    ditions as the municipality had a lawful right to impose.

The facts are stated in the opinion.

*Messrs. A. Lastra Charriez* and *M.* and *B. Guerra Mon-
dragón* for the appellant.

*Messrs. Parra & Pérez Marchand* and *J. Tous Soto* for
the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

This case and six others were submitted on the same day
and, in substance, on the same brief.

The mayor of Ponce made an application for a writ of
injunction, the prayer of which was substantially as follows:

"Wherefore, the complaining corporation prays the court, after
due compliance with the formalities of law, to issue a final injunc-
tion enjoining the defendant herein from making or permitting to be
made in any form whatsoever, either personally or by their agents or
employees, any repairs to or reconstruction of the house described
in this complaint without first obtaining from the complainant the
proper permit in the legal form prescribed by the said ordinance
and by section 7 thereof and also from deviating from, violating or
doing anything to evade the provisions of said section 25 of the
ordinance referred to, requiring the cutting out of a prism of the
dimensions and in the manner specified in the said ordinance, de-
creeing in any event that the defendants are in duty bound to cut
out the said triangular section or prism and to obtain a permit from

the complainant before proceeding in such work of reconstruction, together with all other proper pronouncements in the case."

Sections 7 and 25, referred to, are as follows:

"Section 7.—Every kind of construction work, repairs to buildings, houses and public roads or way, as well as any changes or removals that may affect the public embellishment in zones Nos. 1 and 2 must be approved by the Municipal Administration in accordance with and subject to the laws in force regarding the matter, before carried into execution. In zone No. 3 where only permits for buildings adjoining insular roads are required, buildings hereinafter constructed shall conform to the alignment of adjoining streets, the distance between the house and the fence to be one meter."

"Section 25.—In all corner lots, in all new buildings on corner lots, in all buildings situated at corners, owners repairing or modifying such buildings shall be required to cut out a prism or triangular section from the building so repaired or modified in which each side bounding or adjoining the street shall be at least three meters from the corner of the lot, not including the width corresponding to the sidewalk; *Providing,* That in corners in which a triangular section has been cut out and has more or less the the same dimensions specified in this section the same shall serve as to measurement and form as a guide for the rest. The municipality will refund the va'ue of the land taken up by the prism on the basis of the previous insular assessment; *Providing,* That in those cases in which the municipality, for purposes of public safety, orders a corner to be made by cutting out a triangular piece from houses or lots that are not being repaired or reconstructed, all the expenses accruing from the change shall be for account of the municipality itself. When a building is constructed or modified, only the value of the land dedicated to the public service shall be indemnified and in such cases it will suffice to address a communication to the municipal council accompanied by a certificate attesting to the land so dedicated signed by the municipal engineer, and by an insular tax receipt; *Providing,* That the new city buildings shall conform to plans approved by the Department of Municipal Public Works and the prisms shall be as wide as the narrowest street at the crossing of the two streets so that the whole shall form an octagon and in this case the municipality will make no compensation for the land to be dedicated to the public service for the purposes of the prisms or triangular sections."

The complaint alleged that the defendant was tearing

down and rebuilding without a due permit and without complying with section 25 of the ordinance requiring owners of houses on street corners to cut out a triangular section or prism free from the building. In other words, the ordinance required that the building line on each street should be three meters away from the corner of the lot.

The appellee alleged in the court below that he obtained the said permit and that he was not destroying and repairing, but only repairing to overcome some cracks caused by the earthquake of October 11, 1918, and also by demurrer maintained that the ordinance was unconstitutional for various reasons, among others, that it was *ultra vires*.

The court rendered judgment for the defendant, nominally, at least, on the demurrer. However, there was a trial, wherein the proof tended to show that a permit to build was granted to the defendant. More properly, after a demurrer, answer and trial, as here, the judgment of the court should have been general and on the ground that the ordinance was unconstitutional or *ultra vires*, but no point is made in the brief of the appellant that the appellee was building without a permit, a fact that would be admitted if the case were to be decided on demurrer. On the contrary, appellant maintains that as the appellee found it necessary under the ordinance to obtain such a permit, he was estopped or prevented from denying the validity of section 25 of said ordinance. So that, in considering this appeal, we shall not treat it as solely raised by demurrer, wherein all the facts of the complaint would have to be taken as true, but we must treat the judgment after a trial as one wherein the question of whether a permit had been granted *vel non* was eliminated by the trial and by the acts of the parties and that the judgment was on the law question as raised by demurrer, answer and trial. Therefore we shall take the question of the validity of section 25 of the ordinance as squarely before us.

The court below, after reciting section 25 of the ordinance, draws attention to the fact that at one place therein

the municipality offers to indemnify the owners, but does not offer to so indemnify when the prismatic part or *chaflán* is to be devoted to the public service. Therefore the court says that the ordinance reveals a spirit of eminent domain, and that the property of the defandant may not be expropriated until the proceedings for the taking of property by eminent domain are duly put into execution, with the previous necessity of a declaration of utility by the proper body and compensation to the owner; that the ordinance would make a proprietor give up his property without due process of law, and the court also finds that the case before it was one where the municipality would undertake to indemnify the owner according to the last previous tax rate.

The appellant maintains that this was not a case where the municipality was attempting to acquire a piece of land, but solely one requiring the defendant to cut off a triangle or prism on his lot on which he must either not build or build in accordance with the permit granted.

We agree with the appellant that it does not appear clearly what the municipality could or would do after the triangle was cut out, but we do see very clearly that the appellee, if he must follow the ordinance, would perhaps be prevented from restoring his house to its previous condition, or would perhaps be compelled to destroy a part of it, and in any event be prevented from using the triangular piece for building purposes. And when a man is prevented by paramount authority from using a part of his property for building purposes and the like in the manner he pleases, the act of the paramount authority is an act of eminent domain and can only be exercised in accordance with the law of eminent domain.

Appellant complains of the conduct of the appellee in obtaining a permit to build and then violating a condition of the permit as granted. However, the appellee was bound to obtain the permit, but he had a right to ignore the condition if it were one the municipality had no right to impose.

We cannot agree with the appellant that there was any deceit practiced against the municipality in obtaining this permit and then not cutting out the triangle.

Appellant maintained, too, that eminent domain is only necessary for certain purposes mentioned in the law of 1903, but as we have already indicated and without considering what may be specifically expropriated by law, we cannot agree with the appellant that the enforced dedication of the land to public purposes would not be an act of eminent domain. Appellant says that nowhere in the ordinance does it say that the land shall become public property, but such would be the necessary effect of the ordinance if the triangle were ultimately included in the sidewalk or defendant made to establish a building line. If the municipality wants to acquire this land or desires to restrict building operations, short of an authority given by the Legislature to the municipality to condemn, there is no way except by the existing proceeding for eminent domain.

The record in this case leaves it somewhat doubtful whether, in fact, the municipality by the immediate effect of the ordinance acquires the property, but we agree with the court that the ordinance was not due process of law. The court also was right, we think, when it maintained that the ordinance attempted to execute an act of eminent domain.

Every owner has a right freely to use his land for building purposes until the Legislature by due process takes it from him. Such a power may be delegated to a municipality. The police powers, likewise, of a municipality are very broad, but the appellant has not shown that the act here sought to be enforced falls within the police power of the town of Ponce independently of due compensation to the owner. The purpose for requiring this truncating of the land is not stated in section 25, and, moreover, it does not appear that the

public health or the public safety required the change contemplated by the ordinance. It is true, as stated in 12 Corpus Juris, 931, that "since the very foundation of the police power is a control of private interests for the public welfare, a statute or ordinance is not rendered unconstitutional by the mere fact that private rights of persons or property are subjected to restraint or that loss would result to defendants from the enforcement," but we cannot see that this act was within the police power of the City of Ponce without an adequate proceeding for condemnation. It makes no difference that condemnation proceedings are difficult in Porto Rico or that they require the act of the Executive Council or its substitute.

We might, perhaps, deplore the attitude of the citizens of Ponce if by small sacrifices and submitting to the ordinance they could improve the beauty of their city, but we have no idea from the record how much expense or difficulty the appellee would encounter if he were compelled to comply with section 25. As we understand the complaint and the brief, the utmost that can be claimed for this ordinance is that it tends to the public ornament (*ornato*). It is almost unanimously held that a state or a municipality cannot, without compensation, by virtue of the police power alone, limit for purely aesthetic purposes the use which a citizen may make of his property. *Wineburgh Advertising Company* v. *Murphy,* 21 L. R. A. (N. S.), 735, and *Haller Sign Works* v. *Physical Culture Training School,* 34 L. R. A. (N. S.), 998, and notes; *Byrne* v. *Maryland Realty Company,* L. R. A. 1917 A, 1216, 1220.

And similar considerations prevail where authorities attempt, as here, to establish without due compensation a building line. *Eubank* v. *Richmond,* 42 L. R. A. (N. S.), 1123; *Willison* v. *Cooke,* 44 L. R. A. (N. S.), 1030; *Fruth* v. *The Board of Affairs of the City of Charleston,* L. R. A. 1915

C, 981. The appellee in the court below also cited Mac-Quillan on Municipal Corporations, Vol. 3, passim, but we have not the work before us. And in the case of *Municipality of Ponce* v. *Gely*, 25 P. R. R. 140, quoted by the court below, we said:

"It cannot be denied that the development and embellishment of modern cities require that municipalities shall have wide powers for adopting and enforcing measures to that end, regardless of how radical they may seem at first sight; always provided, of course, that they do not unjustly oppress the citizens or deprive them of their property without due process of law."

The Municipality of Ponce, whether it wished to acquire the title or not, would have deprived the owner of such property without the due proceeding involving just compensation. Hence, necessarily, it made no difference that the appellee violated one of the conditions attached to the permit to build.

If any doubt remains on this point it must be resolved by the nature of the suit before us. The complaint is an application for an injunction, a proceeding in equity; hence the maxims such as "He who seeks equity must do equity" and the like, are applicable. The court always has a sound discretion in injunction cases and will not apply the writ if it will result in an injustice or a deprivation of property to a defendant. Nor may a complainant in an injunction suit insist that the terms of a permit have been violated when those terms are unconstitutional and void.

The judgment must be

*Affirmed.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.